UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CURTIS W. FISHER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GREAT SOCIALIST PEOPLE'S<br>LIBYAN ARAB JAMAHIRIYA, et al<br>    Defendants. | Civil Action 04-02055 (HHK) |
| LAWRENCE P. FISHER II, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GREAT SOCIALIST PEOPLE'S<br>LIBYAN ARAB JAMAHIRIYA, et al<br>    Defendants. | Civil Action 05-02454 (HHK) |

**MEMORANDUM OPINION AND ORDER**

On December 21, 1988, Pan Am Flight 103 exploded 31,000 feet in the air over Lockerbie, Scotland, killing all 259 passengers on board and eleven people on the ground. Among those killed was Charles T. Fisher IV, a United States Citizen. Four of his siblings, Curtis W. Fisher, Mary Fisher Hickey, Margaret Fisher Jones, and Lawrence P. Fisher II

(collectively "Fishers"), bring this action,[1] against the Great Socialist People's Libyan Arab Jamahiriya and the Libyan External Security Organization (collectively "Libya"), and Abdel Basset Ali Al-Megrahi ("Al-Megrahi").  The Fishers seek to hold defendants liable pursuant to the state-sponsored terrorism exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7), the so-called Flatow Amendment, 28 U.S.C. § 1605 note, and the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note.  The Fishers also assert a cause of action for intentional infliction of emotional distress.  Before the court are motions to dismiss by Libya [#33 in 04cv02055 and #17 in 05cv02454] and Al-Megrahi [#14 in 04cv02055].

## I. BACKGROUND

Following the December 1988 explosion of Pan Am Flight 103 over Lockerbie, Scotland, the United States and the United Kingdom indicted Al-Megrahi, a high-ranking member of the Libyan External Security Organization, on charges that he planned and executed the bombing. By agreement between the United States, the United Kingdom, and Libya, Al-Megrahi was tried under Scottish criminal law by a panel of three Scottish judges constituting the High Court of Justiciary at Camp Zeist in The Netherlands.

On January 31, 2001, the Scottish panel unanimously convicted Al-Megrahi of the murders of all 270 victims for his role in the bombing.  Al-Megrahi's conviction was unanimously affirmed by the Appeal Court of the High Court of Justiciary on March 14, 2002.

---

[1] On February 16, 2007, the court consolidated 05cv02454, brought by Lawrence P. Fisher II, and 04cv02055, brought by Curtis W. Fisher, Mary Fisher Hickey, and Margaret Fisher Jones, for the purpose of establishing liability.  Prior to the consolidation order, Libya filed a motion to dismiss in each action.  Libya's legal arguments in each motion are identical and the court resolves both motions in this memorandum opinion and order.

On August 15, 2003, the Chargé d'Affaires of the Permanent Mission of Libya to the United Nations issued a statement to the U.N. Security Council that Libya "[h]as facilitated the bringing to justice of the two suspects charged with the bombing of Pan Am 103 and accepts responsibility for the actions of its officials." United Nations Doc. S/2003/818.

The Fishers bring this action seeking compensatory and punitive damages from Libya and Al-Megrahi for their conduct resulting in the death of Charles T. Fisher.

## II. ANALYSIS

**A.  Libya's Motion To Dismiss**

   *1.  The Foreign Sovereign Immunities Act and Flatow Amendment*

The Fishers assert causes of action against Libya based on the FSIA and the Flatow Amendment. As Libya correctly asserts, neither provision creates a cause of action against a foreign state.[2] The FSIA, however, does provide a jurisdictional basis for the Fishers to pursue a cause of action against Libya under some other source of law.

Although the FSIA generally provides foreign states with immunity from suit in U.S. courts, it enumerates several exceptions under which a foreign state may be sued. 28 U.S.C. §§ 1605, 1607. The so-called "state-sponsored terrorism exception," added in 1996, abrogates a

---

[2] Libya also asserts that it cannot be held liable under the TVPA because the TVPA only creates a cause of action against individuals, not states. Libya's argument is correct. *See* H.R. Rep. No. 102-367, p. 87 (1992) ("Only 'individuals,' not foreign states, can be sued under the [TVPA]."); S. Rep. No. 102-249, p. 7–8. (1991) (similar). Although the Fishers' complaint is not entirely clear on this point, to the extent that it could be read to assert such a claim against Libya, such a claim is impermissible.

foreign state's immunity for personal injuries caused by terrorist acts committed by the state's officials or agents. 28 U.S.C. § 1605(a)(7).[3]

Five months after creating the state-sponsored terrorism exception, Congress enacted the Flatow Amendment, 28 U.S.C. § 1605 note. The Flatow Amendment provides U.S. nationals with a private cause of action for damages against individual officials, employees, and agents of designated foreign states acting in their personal capacities. 28 U.S.C. § 1605 note.[4]

Neither the FSIA nor the Flatow Amendment, "nor the two considered in tandem," however, create a cause of action against a foreign state. *Cicippio-Puleo v. Islamic Republic of*

---

[3] The FSIA, enacted in 1976, was amended in 1996 as part of the comprehensive Antiterrorism and Effective Death Penalty Act ("AEDPA"), to provide for the state-sponsored terrorism exception. *See* Pub. L. No. 104-132, § 221(a), 110 Stat. 1214 (1996). The exception provides jurisdiction for a cause of action

> in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency[.]

28 U.S.C. § 1605(a)(7).

[4] Specifically, the Flatow Amendment provides:

> An official, employee, or agent of a foreign state designated as a state sponsor of terrorism . . . while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee, or agent for which the courts of the United States may maintain jurisdiction under section 1605(a)(7) of title 28, United States Code for money damages which may include economic damages, solatium, pain, and suffering, and punitive damages if the acts were among those described in section 1605(a)(7).

28 U.S.C. § 1605 note.

*Iran,* 353 F.3d 1024, 1033 (D.C. Cir. 2004). The FSIA's state-sponsored terrorism exception is purely jurisdictional in that it "merely waives the immunity of a foreign state without creating a cause of action against it." *Id.* And "the Flatow Amendment only provides a private right of action against officials, employees, and agents of a foreign state, not against the foreign state itself." *Id.*

The Fishers assert that, pursuant to the Flatow Amendment, Libya should be held liable under the doctrine of respondeat superior for the acts of its agents. This position is unsustainable. What the Fishers suggest is essentially an end-run around the Flatow Amendment's plain language, which is confined to suits against individuals. If Congress had intended to create respondeat superior liability for foreign states under the Flatow Amendment, Congress would have said so. *See Cicippio* 353 F.3d at 1035-36 (rejecting conclusion in *Cronin v. Islamic Republic of Iran*, 238 F. Supp. 2d 222, 231 (D.D.C. 2002) that a foreign state could be sued under the Flatow Amendment and FSIA on the theory of respondeat superior).

Thus, the Fishers have no cause of action against Libya under the Flatow amendment or the FSIA. However, the FSIA's state-sponsored terrorism exception does provide subject matter jurisdiction for the Fishers to pursue a cause of action against Libya under some other source of law in federal court. *Cicippio-Puleo*, 353 F.3d at 1027. This exception to immunity only applies if (1) a foreign state defendant has been specifically designated by the U.S. State Department as a "state sponsor of terrorism" at the time the incident occurred; (2) the foreign state is afforded a reasonable opportunity to arbitrate any claim based on acts that occurred in that state; and (3) either the victim or the claimant was a U.S. national at the time those acts took place. *Id.* § 1605(a)(7)(A-B). Here, the Fishers meet the requirements of § 1605(a)(7). Libya was designated

as a sponsor of terrorism at the time of the incident.[5]  *See* 31 C.F.R. § 596.201; *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 89 (D.C. Cir. 2002).  All of the victims were U.S. citizens; and Libya does not contend that it has been denied a chance to arbitrate its claims.

As plaintiffs have properly asserted subject matter jurisdiction pursuant to the state-sponsored terrorism exception to the FSIA, the court must proceed to determine whether they have asserted causes of action under other sources of law that may be properly brought against a foreign state.

### 2. Other Causes of Action against Libya

A suit against a state sponsor of terrorism pursuant to the FSIA "must identify a particular cause of action arising out of a specific source of law," *Acree v. Republic of Iraq*, 370 F.3d 41, 59 (D.C. Cir. 2004), which may "includ[e] state law," *Cicippio-Puleo,* 353 F.3d at 1036.  As the D.C. Circuit has explained, "generic common law cannot be the source of a federal cause of action.  The shared common law of the states may afford useful guidance as to the rules of decision in a FSIA case where a cause of action arises from some specific and concrete source of law." *Acree,* 370 F.3d at 59.

Here, the Fishers assert a claim against Libya for intentional infliction of emotional distress.  Libya contends that the Fishers have failed to plead this claim with the requisite

---

[5] Libya's argument that the court lacks subject matter jurisdiction in light of the State Department's 2006 rescission of Libya's designation as a state sponsor of terrorism is uninformed.  "[T]he FSIA specifically provides that when a country, once designated as a state sponsor of terrorism, is subsequently restored to good standing, that country is still amenable to suit for acts that took place prior to the restoration of its sovereign immunity." *Acree v. Republic of Iraq*, 370 F.3d 41, 56 (D.C. Cir. 2004); *see also Hartford Fire Ins. Co. v. Socialist People's Libyan Arab Jamahiriya*, 2007 WL 1876392 at *3-4 (D.D.C. June 28, 2007) (rejecting Libya's argument that the State Department's rescission of Libya's status as a state sponsor of terrorism deprived the court of subject matter jurisdiction).

particularity required by *Cicippio-Puleo* and *Acree* because they have failed to "identify[] a particular state as the basis for their causes of action." Libya's Mot. to Dismiss at 13. Libya's argument is without merit.

      Libya misconstrues this Circuit's pleading requirements under the FSIA; plaintiffs need not set forth their *choice of law* contentions in their complaint. *Dammarell v. Islamic Republic of Iran*, 370 F. Supp. 2d 218, 221 (D.D.C. 2005) (noting that the court is "unaware of any law, either in the FSIA setting or out, that would require" plaintiffs to "include the choice of law determination in the Complaint itself"). The Fishers are required to identify "whether these claims are based in state law (or some other source of law), or whether they arise out of the common law or a particular statute," but they need not specify in the complaint a particular state out of which each claim arises. *Dammarell*, 370 F. Supp. 2d at 221 (internal quotation marks omitted). In order to survive a motion to dismiss, a plaintiff must give a defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 223 (citing *Modderno v. King*, 82 F.3d 1059, 1063 (D.C. Cir. 1996)). A plaintiff need not specify every theory under which she might proceed, however. *See Hanson v. Hoffman*, 628 F.2d 42, 53 (D.C. Cir. 1980) ("The liberal concepts of notice pleading embodied in the Federal Rules do not require the pleading of legal theories."). Choice of law is a legal determination that the court will make under its choice of law rules. *See Jannenga v. Nationwide Life Ins. Co.*, 288 F.2d 169, 171 (D.C. Cir. 1961) (observing that "federal courts will take judicial notice of the law of the several states . . . whether pleaded or not") (internal quotation marks omitted)); *see also Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) (holding that plaintiffs are not required to identify the federal or state law in a complaint, which may be

discovered by interrogatories or through briefing); 8 Wright & Miller, Federal Practice and Procedure 3d. § 1253 (2004).

Here, the Fishers have set forth the events that occurred, the location of those events, the residences of the parties, and the common law cause of action under which they seek relief. Their allegations constitute the "short and plain statement" required by the federal rules, and no further notice is required. *See Simpson v. Socialist People's Libyan Arab Jamahiriya*, 362 F. Supp. 2d 168, 182-83 (D.D.C. 2005) (denying a motion to dismiss where complaint specified causes of action for false imprisonment, intentional and/or negligent infliction of emotional distress, assault, battery, loss of consortium and solatium, and loss of prospective inheritance). Thus, the court concludes that the complaint adequately pleads a claim for relief against Libya which arises from the common law of the applicable states.[6]

### 3. *Personal Jurisdiction*

Libya also contends that the complaint should be dismissed because the Fishers do not have personal jurisdiction over Libya. Libya's contention is without merit. Personal jurisdiction exists over a foreign state where the plaintiff establishes an exception to immunity pursuant to § 1605, and service of process is accomplished pursuant to § 1608. 28 U.S.C. § 1330(b); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d at 89. Plaintiffs meet the requirements of the state-sponsored terrorism exception, as discussed above, and they accomplished service of Libya with the original complaint in 2006 through diplomatic channels, pursuant to § 1608(a)(4).

---

[6] Defendants do not contend that plaintiffs have insufficiently plead facts that would state a claim for intentional infliction of emotional distress under the possible jurisdictions available under choice of law analysis — the law of the location where the event occurred (Scotland), the law of the forum (District of Columbia), or the laws of the domiciles of plaintiffs (Maryland, Michigan, Colorado, Massachusetts).

*See* Letter from William P. Fritzlen to Nancy Mayer-Whittington, November 8, 2006 [#26].  As plaintiffs have satisfied both requirements, the court concludes that personal jurisdiction over Libya has been established.

### *4.     Punitive Damages*

Libya asserts that neither the Great Socialist People's Libyan Arab Jamahiriya nor the Libyan External Security Organization may be sued for punitive damages.[7]  Under the FSIA, a foreign state is expressly protected from liability for punitive damages, but an agency or instrumentality thereof, such as a commercial entity, may be held liable for punitive damages.  28 U.S.C. § 1606 (providing that "a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages").  If the core functions of the entity are governmental, it is considered the foreign state itself; if the functions are commercial, the entity is an agency or instrumentality and not the foreign state itself.  *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148, 153 (D.C. Cir. 1994) (adopting categorical approach to distinction); *Regier v. Islamic Republic of Iran*, 281 F. Supp. 2d 87, 103-04 (D.D.C. 2003) (determining that Iran's Ministry of Information and Security were engaged in core governmental functions and thus were part of the foreign state).

The Great Socialist People's Libyan Arab Jamahiriya is the official name for the foreign state of Libya and, as such, is not liable for punitive damages.[8]  28 U.S.C. § 1606.  The Libyan

---

[7] For purposes of the discussion on punitive damages only, the court treats the Great Socialist People's Libyan Arab Jamahiriya and the Libyan External Security Organization as distinct entities instead of collectively as "Libya."

[8] *See, e.g.,* U.S. Department of State, Background Note: Libya (October 2007), http://www.state.gov/r/pa/ei/bgn/5425.htm.

External Security Organization, like Iran's Ministry of Information and Security, performs core governmental functions for Libya regarding its security and intelligence and thus is also protected from liability for punitive damages. *Regier*, 281 F. Supp. 2d at 103-04.

**B.     Al-Megrahi's Motion to Dismiss**

Defendant Al-Megrahi moves to dismiss on the grounds that (1) the Fishers have no standing; and (2) the Fishers failed to effect service within the period permitted under Scottish law.[9]

*1.     Standing*

Al-Megrahi contends that plaintiffs do not have standing to bring this action under the TVPA or the Flatow Amendment because they are not the legal representatives of the decedents. Al-Megrahi asserts that these causes of action only contemplate one "death suit" on behalf of a victim of a terrorist attack, and that he already settled that suit with the legal representative of Charles T. Fisher's estate, Barbara Liberman. Plaintiffs rejoin that they are not bringing this action on behalf of their brother, Charles T. Fisher, but rather for their own personal injuries as a result of the bombing.

    **a.     The Torture Victim Protection Act**

The TVPA, 28 U.S.C. § 1350 note, was added to the Alien Tort Statute in 1992 to authorize a federal statutory cause of action on behalf of victims or their representatives for acts

---

[9] Al-Megrahi also argues that the court should decline to exercise its jurisdiction because this case involves a non-justiciable political question. This argument is without merit. Merely because "the issues before [the court] arise in a politically charged context does not convert what is essentially an ordinary tort suit into a non-justiciable political question." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 49 (2d Cir. 1991); *see also Vine v. Republic of Iraq,* 459 F. Supp. 2d 10, 20 (D.D.C. 2006).

of torture or extrajudicial killing. Pub. L. No. 102-256, 106 Stat. 73 at Historical and Statutory Notes to 28 U.S.C.A. § 1350; *see also Ford v. Garcia*, 289 F.3d 1283, 1286 (11th Cir. 2002). The statute provides that foreign individuals can be held liable for money damages for torture or extrajudicial killings committed "under actual or apparent authority, or color of law." 28 U.S.C. § 1350 note. The language of the TVPA limits recovery to the actual victim of torture, "the individual's legal representative," or "a claimant in an action for wrongful death." *Id.* The TVPA provides a cause of action for both aliens and U.S. citizens to sue in federal court. *See* S. Rep. No. 102-249, p. 4 (1991); H.R. Rep. No. 102-367, p. 86 (1991).

The plain language and the legislative history of the TVPA make clear that standing is limited to the victim himself or one bringing a claim on behalf of the victim. *See Doe v. Qi*, 349 F. Supp. 2d 1258, 1313 (N.D. Cal. 2004) (reviewing history and concluding that TVPA only permits suits by or on behalf of victim). Thus, the Fishers cannot seek damages for any injuries they sustained as a result of their brother's death.

To recover on behalf of their brother under the TVPA, the Fisher plaintiffs need to show that they have standing to bring a wrongful death action. 28 U.S.C. § 1350 note.[10] The court looks to the law of each plaintiff's state of domicile to determine whether a decedent's sibling has standing to bring a wrongful death action. *Dammarell v. Islamic Republic of Iran*, 2005 WL 756090 at *19 (D.D.C. March 29, 2005). Under the laws of Colorado, Michigan, and Massachusetts, Mary Hickey, Curtis Fisher, and Margaret Jones do not have standing to bring a wrongful death action against Al-Megrahi. *Ablin v. Richard O'Brien Plastering Co.*, 885 P.2d

---

[10] None of the Fisher plaintiffs contend that they are the legal representative or administrator of their brother's estate.

289, 292 (Colo. App. 1994) (holding that decedent's brother and sister lacked standing to bring an action under Colorado's Wrongful Death Act); Mich. Comp. Laws. Ann. § 600.2922(2) (2007) ("Every action under this section shall be brought by, and in the name of, the personal representative of the estate of the deceased."); Mass. Gen. Laws ch. 229, § 2 (2008) ("Damages under this section [of the wrongful death statute] shall be recovered in an action of tort by the executor or administrator of the deceased."). In contrast, Maryland law may permit Lawrence Fisher to bring a wrongful death action on behalf of his brother. Md. Code. Ann., Cts & Jud. Proc. § 3-904 (2007) (stating that if the decedent has no wife, husband, parent or child, "an action shall be for the benefit of any person related to the deceased person by blood or marriage who was substantially dependent upon the deceased."). Accordingly, the court dismisses any claim against Al-Megrahi under the TVPA brought by plaintiffs Mary Hickey, Curtis Fisher, and Margaret Jones.

      **b.**    **The Flatow Amendment and ATA**

The Fishers do have standing under the Flatow Amendment, however, to pursue claims against Al-Megrahi for the injuries that the Fishers *themselves* suffered as a result of the Lockerbie bombing.

The Flatow Amendment provides for a private cause of action for "personal injury" to a U.S. national and permits recovery for "economic damages, solatium, pain, and suffering, and punitive damages if the acts include" state-sponsored terrorism, airplane sabotage, and extrajudicial killing. 28 U.S.C. § 1605 note. Damages for "solatium" are generally defined as damages for "the mental suffering and anguish of the beneficiaries . . . resulting from the death of the decedent." 25A C.J.S. Death § 187 (2006). As the death of a loved one due to terrorism or

airplane sabotage could cause such mental suffering for several U.S. nationals – and not just the victim's legal representative – the Flatow Amendment necessarily contemplates actions by more than just a decedent's legal representative. *See, e.g., Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 338 (D.C. Cir. 2003) (explaining that claims for solatium under Flatow Amendment follow Restatement (Second) of Torts § 46's articulation of intentional infliction of emotional distress, which permits recovery for all immediate family members meeting the criteria). Moreover, the very purpose of the Flatow Amendment – to compensate victims of terrorism – contemplates recovery by family members precisely because "a terrorist attack – by its nature – is directed not only at the victims but also at the victims' families." *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005) (concluding that family members of bombing victims could recover for intentional infliction of emotional distress); *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27, 35 (D.D.C. 2001) ("If the defendants' conduct is sufficiently outrageous and intended to inflict severe emotional harm upon a person which is not present, no essential reason of logic or policy prevents liability." (internal quotation marks omitted)). Thus, plaintiffs are entitled to seek recovery for their own injuries under the Flatow Amendment.

Al-Megrahi's contention that plaintiffs' Flatow Amendment claim is barred by a prior global settlement between the defendants and the personal representative of the decedent is unavailing. Al-Megrahi proffers no evidence of this global settlement, or that the personal representative of Charles T. Fisher was party to such a settlement. Even if such a settlement existed, it would only have resolved claims concerning the injuries to the victims and/or their legal representatives. Plaintiffs were not a party to that settlement and are entitled to bring claims in their personal capacities for injuries suffered as a result of the bombing. *See, e.g.,*

13

*Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 102 (D.D.C. 2006) (allowing decedent's family members to recover for intentional infliction of emotional distress in their personal capacity). Thus, plaintiffs may proceed against Al-Megrahi under the Flatow Amendment for their own injuries.

   *2.   Service*

Al-Megrahi argues that the law of the jurisdiction where service is effected governs whether the Fishers have served their complaint within the time allowed under the statute of limitations. Al-Megrahi contends that in Scotland, the date of service marks the commencement of the civil action. He maintains that the Fishers' claims are time barred because he was served after the statute of limitations expired.[11] Al-Megrahi's reliance on Scottish law is misplaced.

Statutory provisions, such as the state-sponsored terrorism exception and the Flatow Amendment, involving "a waiver of immunity and a federal jurisdictional provision . . . must be interpreted solely by reference to federal law." *Sexton v. U.S.*, 832 F.2d 629, 633 (D.C. Cir. 1987). Federal law unambiguously provides that "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. The filing of the complaint " unquestionably . . . commences an action for statute of limitation purposes." *Hobson v. Wilson*, 737 F.2d 1, 45 (D.C. Cir. 1984), *overruled on other grounds*, *Leatherman v. Tarrant County*, 507 U.S. 163 (1993). The Fishers filed their amended complaint on January 17, 2006, well before the date on which Al-Megrahi maintains the statute of limitation expired.

---

   [11] Al-Megrahi states that the statute of limitations expired on April 24, 2006, ten years after the state-sponsored terrorism exception to the FSIA was enacted, and that he was not served under May 12, 2006.

## III. CONCLUSION

For the foregoing reasons, it is this 27th day of March 2008,

**ORDERED** that

(1) Libya's motion to dismiss [#33 in 04cv02055 and #17 in 05cv02454] is **GRANTED** with respect to claims against Libya brought under the TVPA, liability for punitive damages, and liability under principles of respondeat superior; and **DENIED** in all other respects;

(2) Al-Megrahi's motion to dismiss [#14 in 04cv02055] is **GRANTED** with respect to claims against Al-Megrahi brought under the TVPA by plaintiffs Mary Hickey, Curtis Fisher, and Margaret Jones; and **DENIED** in all other respects.

Henry H. Kennedy, Jr.<br>
United States District Judge